MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

DANIEL R. KALEBA  (CABN 223789)
JEFFREY B. SCHENK(CABN 234355)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, CA 95113
   Telephone: (408) 535-5061
   Fax:  (408) 535-5066
   E-Mail: daniel.kaleba@usdoj.gov
        jeffrey.b.schenk@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br>    Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> CLAY H. ROJAS, ) <br> ) <br>    Defendant. ) <br> ) | No.  CR 10-00931 LHK <br><br> **UNITED STATES' TRIAL BRIEF** <br><br> Trial:        July 19, 2011 <br> Pretrial Conf: June 24, 2011 <br> Court:      Hon. Lucy H. Koh |

The United States of America, represented by Assistant United States Attorneys Daniel R. Kaleba and Jeffrey B. Schenk, files this Trial Brief addressing the evidence to be submitted and the potential legal issues to be raised during the trial in the above referenced matter.

### I. INTRODUCTION

Defendant Clay Rojas is a former police officer with the Santa Clara Police Department. In approximately September of 2010, it was discovered by law enforcement that Rojas was providing information from confidential law enforcement databases to William Bettencourt, a felon and member of the Santa Cruz chapter of the Hells Angels.  Viviana Rodriguez is a former co-worker of Bettencourt's, who submitted some of the requests for the confidential information

UNITED STATES' TRIAL BRIEF
CR 10-00931 LHK

to Bettencourt.

Rojas admitted during his October 14, 2010 post-arrest statement that he owed Bettencourt money, and that he performed these database checks for Bettencourt because he felt pressure about the repayment, and that these checks were a way of deferring repayment of his loan to Bettencourt. Rojas was subsequently indicted by a federal grand jury for the crimes of honest services fraud, conspiracy to commit the same, and unlawfully obtaining information from a protected computer. Rojas provided confidential criminal history and motor vehicle information to Bettencourt in exchange for extensions of time to repay Rojas' debt to Bettencourt. The alleged *quid pro quo*, therefore, is confidential information from Rojas, at the request of Bettencourt, in exchange for extensions on the repayment of Rojas' debt to Bettencourt.

## II.   THE CHARGES AND ELEMENTS

On April 20, 2011, the grand jury returned a twelve count indictment against defendant Rojas and others. Rojas is charged with one count of conspiracy to commit honest services fraud, in violation of 18 U.S.C. § 1349 (Count One); five counts of honest services fraud and aiding and abetting the same, in violation of 18 U.S.C. §§ 1343 and 1346, and 18 U.S.C. § 2 (Counts Two – Six); and six counts of exceeding authorized access from a protected computer, in violation of 18 U.S.C. § 1030(a)(2)(C) (Counts Seven – Twelve). Counts Eight through Twelve alleges the additional element that the defendant exceeded his authorized access from a computer for financial gain, in violation of 18 U.S.C. §§ 1030(a)(2)(C) and (c)(2)(B)(i).

The elements of the offense are set forth below.

UNITED STATES' TRIAL BRIEF
CR 10-00931 LHK                              2

    **A.**    **Conspiracy to Commit Honest Services Fraud (18 U.S.C. § 1349)**

        1.    there was an agreement between two or more persons to commit at least one crime as charged in the indictment, here honest services fraud, in violation of 18 U.S.C. § 1343; and

        2.    the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.[1]

    **B.**    **Honest Services Radio or Wire Fraud (18 U.S.C. §§ 1343 and 1346)**

        1.    The defendant knowingly devised or participated in a scheme or plan to deprive the People of Santa Clara, California, and the Santa Clara Police Department of its right of honest services;

        2.    The scheme or plan consisted or a bribe or kickback in exchange for the defendant's services. The "exchange" may be express or it may be implied from all the surrounding services;

        3.    the defendant acted with the intent to defraud by depriving the People of Santa Clara, California, and the Santa Clara Police Department of its right of honest services;

        4.    the defendant's act was material; that is, it had a natural tendency to influence, or was capable of influencing, an person's acts; and

        5.    the defendant transmitted, or caused to be transmitted, any writing, signal,

---

[1] Ninth Circuit Model Jury Instruction No. 8.20. An overt act is not required for a § 1349 prosecution because the applicable statute does not require an overt act. *See Comment to Instruction No. 8.20* (stating "Use the third element in this instruction only if the applicable statute requires proof of an overt act, *e.g.*, 18 U.S.C. § 371 (first clause) or 18 U.S.C. § 1511(a) (conspiracy to obstruct state or local law enforcement), but omit the third element when the applicable statute does not require proof of an overt act. *See Whitfield v. United States*, 543 U.S. 209, 212–15 (2005) (proof of overt act not necessary for conspiracy to commit money laundering); and *United States v. Shabani*, 513 U.S. 10, 15-16 (1994) (proof of overt act not necessary for conspiracy to violate drug statutes))."

UNITED STATES' TRIAL BRIEF
CR 10-00931 LHK                3

or sound by means of a wire or radio communication in interstate or

foreign commerce.[2]

---

[2] Ninth Circuit Model Jury Instruction No. 8.123 (Mail Fraud – Scheme to Defraud – Deprivation of Intangible Right to Honest Services) (as modified to Wire Fraud (*see also* Instruction No. 8.124 ("The only difference between mail fraud and wire fraud is that the former involves the use of the mails and the latter involves the use of wire, radio, or television communication in interstate or foreign commerce. In a wire fraud or attempted wire fraud case, the Committee recommends that Instructions 8.121 (Mail Fraud—Scheme to Defraud or to Obtain Money or Property by False Promises) and 8.123 (Mail Fraud—Scheme to Defraud—Deprivation of Intangible Right of Honest Services)) be modified appropriately.")).

Comment from Instruction No. 8.123:

Honest services fraud criminalizes only schemes to defraud that involve bribery or kickbacks. *Skilling v. United States*, __ U.S. __, 130 S. Ct. 2896, 2931 (2010); *Black v. United States*, __ U.S. __, 130 S. Ct. 2963, 2968 (2010). Undisclosed conflicts of interest, or undisclosed self-dealing, is not sufficient. *Skilling*, 130 S. Ct. at 2932. This instruction is limited to honest services schemes to defraud that involve a bribe or kickback because there is, as yet, no controlling case law subsequent to *Skilling* that extends honest services fraud to any other circumstance. *See Skilling*, 130 S. Ct. at 2933 ("no other misconduct falls within § 1346's province").

The "prohibition on bribes and kickbacks draws content not only from the pre-*McNally* case law, but also from federal statutes proscribing – and defining – similar crimes." *Id.* (citing 18 U.S.C. §§ 201(b) (bribery), 666(a)(2); 41 U.S.C. § 52(2) (kickbacks)); *see also McNally v. United States*, 483 U.S. 350 (1987). Although it did not define bribery or kickbacks, the Supreme Court in *Skilling* cited three appellate decisions that reviewed jury instructions on the bribery element of honest services fraud. *Skilling*, 130 S. Ct. at 2934 (citing *United States v. Ganim*, 510 F.3d 134, 147-49 (2d Cir.2007), *cert denied*, 552 U.S. 1313 (2008); *United States v. Whitfield*, 590 F.3d 325, 352-53 (5th Cir.2009); and *United States v. Kemp*, 500 F.3d 257, 281-86 (3d Cir.2007)). In the Ninth Circuit, bribery requires at least an implicit *quid pro quo*. *United States v. Kincaid-Chauncey*, 556 F.3d 923, 941 (9th Cir.2009). "Only individuals who can be shown to have had the specific intent to trade official actions for items of value are subject to criminal punishment on this theory of honest services fraud." *Id.* at 943 n.15. The *quid pro quo* need not be explicit, and an implicit *quid pro quo* need not concern a specific official act. *Id.* at 945-46 (citing *Kemp*, 500 F.3d at 282 ("[T]he government need not prove that each gift was provided with the intent to prompt a specific official act.")). A *quid pro quo* requirement is satisfied if the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official acts favorable to the donor. *Id.* at 943. Bribery is to be distinguished from legal lobbying activities. *Id.* at 942, 946 (citing *Kemp*, 500 F.3d at 281-82). These principles are consistent with the appellate decisions cited by the Supreme Court.

UNITED STATES' TRIAL BRIEF
CR 10-00931 LHK                                    4

C.  **Exceeding Authorized Access from a Protected Computer (18 U.S.C. § 1030(a)(2)(C))**

   1. The defendant intentionally exceeded authorized access to a computer; and
   2. By exceeding authorized access to a computer, the defendant obtained information from a computer that was used in or affected interstate or foreign commerce or communication.[3]
   3. [The offense was committed for the purpose of private financial gain.][4]

---

The Supreme Court in *Skilling* cited a statutory definition of kickbacks. *Skilling*, 130 S. Ct. at 2933-34 ("'The term 'kickback' means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to [enumerated persons] for the purpose of improperly obtaining or rewarding favorable treatment in connection with [enumerated circumstances].'") (quoting 41 U.S.C. 52(2)).

Honest services fraud requires a "specific intent to defraud." *Kincaid-Chauncey*, 556 F.3d at 941.

The materiality element was included in this instruction based on the presumption that Congress intended to incorporate the well-settled meaning of the common-law term "fraud" into the mail, wire, and bank fraud statutes. *See Neder v. United States*, 527 U.S. 1, 22-23 (1999). The common law test for materiality in the false statement statutes, as reflected in the fourth element of this instruction, is the preferred formulation. *United States v. Peterson,* 538 F.3d 1064, 1072 (9th Cir.2008).

In the case of mail or wire fraud, the government need not prove a specific false statement was made. *United States v. Woods*, 335 F.3d 993, 999 (9th Cir.2003). "Under the mail fraud statute the government is not required to prove any particular false statement was made. Rather, there are alternative routes to a mail fraud conviction, one being proof of a scheme or artifice to defraud, which may or may not involve any specific false statements." *Id.* (quoting *United States v. Munoz*, 233 F.3d 1117, 1131 (9th Cir.2000) (internal citations omitted)).

   [3] Ninth Circuit Model Jury Instruction No. 8.79.  A "protected computer" is, among other definitions, one "used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

   [4] Element Three applies to Counts Eight – Twelve only.

UNITED STATES' TRIAL BRIEF
CR 10-00931 LHK                              5

### III. SUMMARY OF THE GOVERNMENT'S EVIDENCE

The government alleges that defendant Rojas exceeded his authorized access to protected computers on at least six prior dates, set forth below.

| Date | Time | Database Accessed | Item Run | What | Who Ran it |
|---|---|---|---|---|---|
| 6/18/2010 | 16:33:25 | CII | Fidencio Villalobos | CLETS RAPS Name Inquiry | Erica Cramer |
| 7/9/2010 | 0:26:00 | AWS, DL, MPS, SRF, CARPOS, NCIC | William Bettencourt | CLETS MONSTR Warrant Inquiry | Kristin DuHain |
| 7/9/2010 | 0:33:05 | CJIC | C.C. | county wide criminal history | Kristin DuHain |
| 8/20/2010 | 20:51:00 | REG, AWS | ****728 | DMV Registration | Officer Aric Enos |
| 9/3/2010 | 14:03:00 | AWS, DL, MPS, WPS, CARPOS, NCIC | C.C., DOB **/**/**** | DMV DL History | Jennifer Cullen |
| 9/3/2010 | 14:12:01 | CJIC | William Bettencourt | county wide criminal history | Jennifer Cullen |
| 9/3/2010 | 14:12:32 | CJIC | William Bettencourt | county wide criminal history | Jennifer Cullen |

## Clay Rojas Database Inquiries

California Law Enforcement Telecomminucation System (CLETS)
Sheriff's Law Enforcement Telecommunication System (SLETS)

National Databases:        National Crime Information Center (NCIC)

State Databases (CA DOJ):  Wanted Person System (WPS)
                           Domestic Violence and Restraining Order system (DVROS)
                           Missing Person System (MPS)
                           Supervised Release File (SRF)
                           California Department of Motor Vehicles Driver Licenses (DL)
                           California Department of Motor Vehicles Registration (REG)
                           California Criminal History Records (CII)
                           California Restraining and Protective Order System (CARPOS)

Local Databases            Criminal Justice Information Control (CJIC)
(Santa Clara County):
                           Alameda Counta Warrant System (AWS)

UNITED STATES' TRIAL BRIEF
CR 10-00931 LHK                 6

1  The government contends that the defendant caused all but the June 18, 2010 query at the at the request of Bettencourt, and that he did so because he owed Bettencourt money. The *quid pro quo* was confidential information in exchange for additional time to repay a loan owed to Bettencourt. By providing this information to Bettencourt, Rojas breached the duty of honest services he owed the Santa Clara Police Department, as well as the citizens of Santa Clara.

Captain Diana Bishop, with the Santa Clara Police Department, will testify about Rojas' employment with the police department, and the fiduciary duty he owed to the police department and the citizens of Santa Clara. She will also testify about a memorandum she issued to members of her department, prior to the queries at issue, that any association by a member of the department with Bettencourt violated a general order of the police department against associating with a convicted felon.

Captain Captain Michael Sellers, also with the Santa Clara Police Department, will testify about personnel records relating to Rojas' employment with the police department.

Sergeant Brian Gilbert, with the Santa Clara Police Department, will testify about the investigation that led to the above captioned indictment, the communications among the co-conspirators, Rojas' employment with the Santa Clara Police Department, and the post-arrest interview with Rojas.

Erica Cramer, Kristin DuHain, and Jennifer Cullen, each Records Specialists with the Santa Clara Police Department, will testify concerning the database queries listed above. Officer Aric Enos, with the Santa Clara Police Department, will also testify concerning the database query listed above. Melinda Sawin, Records Supervisor, with the Santa Clara Police Department, will testify about the training and permissible use of the law enforcement databases at issue.

Several witnesses will testify about the nature and characteristics about the databases at issue, including Johanna Williams, California Department of Justice, to testify about the California Law Enforcement Telecommunications System; and Kimberly Smith, NCIC Program Manager, Federal Bureau of Investigation, to testify about the National Crime Information Center and the Criminal Justice Information System. The government also anticipates calling a

UNITED STATES' TRIAL BRIEF
CR 10-00931 LHK                               7

1 representative from Santa Clara County to testify about the Santa Clara Criminal Justice
2 Information Control.
3      Lastly, the government will call witnesses from Verizon and AT&T to authenticate as
4 business records the subscriber and toll records from Rojas' cell phone number ending in -3501,
5 and from Bettencourt's cell phone number ending in -2339. The government will also call a
6 witness from AT&T to testify about the use of interstate radio and wire communications by
7 AT&T's SMS text messaging service. The government hopes to reach a stipulation with the
8 defense concerning this evidence to avoid using trial time on the telecommunication company
9 witnesses.

12 Dated: June 10, 2011                        Respectfully submitted,

MELINDA HAAG
United States Attorney

                                   /s/
DANIEL R. KALEBA
JEFFREY B. SCHENK
Assistant United States Attorneys

UNITED STATES' TRIAL BRIEF
CR 10-00931 LHK                  8